# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| J. Bradley Amick and Taylor Kitchens, Individually and on behalf of all those similarly situated, </br></br> Plaintiffs, </br></br> v. </br></br> Lexington County, </br></br> Defendant. | C/A 3:23-cv-00336-CMC </br></br> **AMENDED COMPLAINT** </br> *(Jury Trial Demanded)* |
| Chris Kitchens, </br></br> Plaintiff, </br></br> v. </br></br> Lexington County, </br></br> Defendant. | C/A 3:22-cv-02897-CMC |

Plaintiffs Brad Amick, Taylor Kitchens, individually and on behalf of all those similarly situated[1], amend their complaint as set forth below pursuant to the Court's order, ECF 27, with the amendments in bold and italics:

## INTRODUCTION

1. This is a class action brought to obtain equitable relief, injunctive relief, and monetary damages based on Lexington County's illegal withholding of COVID-19 premium pay depriving class members of payment to which they are entitled.

---

[1] *Plaintiff Chris Kitchens is a member of the putative class. These two cases have been consolidated with Amick et al. v. Lexington County, the class action, as the lead case. See ECF 22 (Text Order consolidating the above captioned cases).*

1

2. This action is brought against Defendant Lexington County for establishing a requirement that eligible employees performing essential work during the COVID-19 public health emergency be on the payroll on specific dates arbitrarily chosen by Defendant Lexington County, in order to receive both tranche payments of COVID-19 hazard pay.

3. Despite Plaintiffs and the Class meeting the federal requirements as set out in the American Rescue Plan Act of 2021 ("ARPA"), the Coronavirus State and Local Fiscal Recovery Funds ("SLFRF"), and the Department of Treasury's interim and final rules, Defendant Lexington County continues to withhold premium pay from Plaintiffs and the Putative Class.

### THE PARTIES, JURISDICTION, AND VENUE

4. Plaintiff, Brad Amick, is a citizen and resident of Lexington County, South Carolina.

5. Plaintiff Taylor Kitchens is a citizen and resident of Lexington County, South Carolina.

6. Defendant Lexington County is a political subdivision of the state of South Carolina.

7. Jurisdiction and venue are proper in this court because Lexington County is where the Defendant is located, and where the acts and/or omissions giving rise to this Complaint occurred.

8. *This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the substantial federal question doctrine.*

9. *Venue is proper in the United States District Court for the District of South Carolina – Columbia Division.*

### FACTUAL ALLEGATIONS

10. *Plaintiffs bring this action on behalf of themselves and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representatives of two proposed subclasses defined as follows:*

(a) All eligible employees employed by Lexington County who performed essential work between January 27, 2020, and March 21, 2021, that left employment with Lexington County prior to October 31, 2021, and did not receive premium pay for essential work performed during the COVID-19 public health emergency.

(b) All eligible employees employed by Lexington County who performed essential work between March 21, 2021, through March 20, 2022, that left employment with Lexington County prior to May 13, 2022, and did not receive premium pay for essential work performed during the COVID-19 public health emergency.

11. *The claims brought by Plaintiffs for each subclass are identical with the only difference being the dates used to calculate and pay out the premium payment.*

12. Plaintiff Brad Amick was employed by the Defendant as a Battalion Chief before January 27, 2020, until October 3, 2021, when he retired.

13. *Plaintiff Brad Amick is a member of both subclasses.*

14. Plaintiff Taylor Kitchens was employed by the Defendant as a Sheriff's Deputy from before January 27, 2020, until April 29, 2022 when she terminated her employment.

**A. The ARPA, SLFRF, the U.S. Treasury Department, and COVID-19 Premium Pay**

15. Since the first case of coronavirus disease 2019 (COVID-19) was discovered in the United States in January 2020, the resulting pandemic has caused both a severe public health and economic crises.

16. In March 2021, Congress enacted the American Rescue Plan Act of 2021 (ARPA) which established the Coronavirus State and Local Fiscal Recovery Funds (SLFRF) to provide

3

state, local, and Tribal governments with the resources needed to respond to the pandemic and its resulting economic effects.

17. The U.S. Department of the Treasury issued an interim final rule implementing the SLFRF program on May 10, 2021, and a final rule on April 1, 2022.

18. The SLFRF program provides vital resources for state, local, and Tribal governments to respond to the pandemic and its economic effects, to replace revenue lost due to the public health emergency, and to prevent cuts to vital government services.

19. Sections 602(c)(1)(B) and 603(c)(1)(B) of the Social Security Act, as added by the ARPA, provide that SLFRF funds be used "to respond to workers performing essential work during the COVID-19 public health emergency by providing premium pay to eligible workers of the . . . government that are performing such essential work, or by providing grants to eligible employers that have eligible workers who perform essential work."

20. Premium pay is designed to compensate workers that, by virtue of their employment, were forced to take on additional burdens and make great personal sacrifices as a result of the COVID-19 pandemic.

21. The United States Treasury has said that premium pay can be thought of as "hazard pay" by another name.[2]

22. Premium pay, as intended by the ARPA, is designed to address the disparity between the critical services provided by and the risks taken by essential workers and the relatively low compensation they tend to receive.

23. The United States Treasury's interim final rule established a three-part framework for recipients seeking to use SLFRF funds for premium pay. First, to receive premium pay one

---

[2] *See* 87 Fed. Reg. 4397.

must be an eligible worker. Second, an eligible worker must also perform essential work. Finally, premium pay must respond to workers performing essential work during the COVID-19 public health emergency.

24. All public employees of state, local, and Tribal governments are specifically included in the interim final rule definition of "eligible worker."[3]

25. The final rule defined "essential work" as work that:

(1) Is not performed while teleworking from a residence and

(2) Involves either:

> (i) Regular, in-person interactions with patients, the public, or coworkers of the individual that is performing the work; or

> (ii) regular physical handling of items that were handled by, or are to be handled by, patients, the public, or coworkers of the individual that is performing the work.

26. The ARPA statute defines premium pay as "an amount of up to $13 per hour . . ., in addition to wages or remuneration the eligible worker otherwise receives, for all work performed by the eligible worker during the COVID–19 public health emergency. Such amount may not exceed $25,000 with respect to any single eligible worker." The definition emphasized that premium pay should be in addition to compensation typically received.

27. Defendant Lexington County will receive $58,028,685.00 in SLFRF funds to be spent through December 31, 2026.

28. There is no requirement or guidance from the federal government that would allow for state, local, or Tribal governments to require eligible workers who performed essential work during the COVID-19 pandemic to **additionally** be currently employed by that state, local, and

---

[3] 31 C.F.R. § 35.3

5

Tribal government at the time of payment in order to receive the premium pay they that they have already earned.

### B. Factual Allegations Specific to the Named Plaintiffs

29.     Plaintiff Brad Amick was employed by the Defendant as a Battalion Chief before January 27, 2020, until October 3, 2021, when he retired.

30.     Plaintiff Taylor Kitchens was employed by the Defendant as a Sheriff's Deputy from before January 27, 2020, until April 29, 2022 when she terminated her employment.

31.     Under 42 U.S.C. § 803(c) and (g), Plaintiffs were "eligible workers" because their service as Battalion Chief and Sheriff's Deputy, respectively, was essential work needed to protect the health and well-being of the residents of Lexington County.

32.     Plaintiffs could not perform this essential work by teleworking, but rather Plaintiffs' work involved regular in-person interaction with the public and co-workers as well as the physical handling of items that had been previously handled by the public or co-workers.

33.     Under 31 C.F.R. § 35.3, "Premium pay will be considered to be in addition to wages or remuneration the eligible worker otherwise receives if, as measured on an hourly rate, the premium pay is:

> (1) With regard to **work that the eligible worker <u>previously</u> performed**, pay and remuneration equal to the sum of all wages and remuneration previously received plus up to $13 per hour with no reduction, substitution, offset, or other diminishment of the eligible worker's previous, current, or prospective wages or remuneration . . ."
>
> (Emphasis added).

34. As eligible workers that performed essential work during the COVID-19 public health emergency, Plaintiffs were entitled to receive premium pay from the funds provided to the Defendant by the federal government.

35. Defendant has made two lump sum payments of premium pay to Lexington County employees. The first on November 5, 2021, and the second on May 20, 2022.

36. On October 15, 2021, Defendant Lexington County issued a Memorandum entitled "Premium Pay for Essential Employees." *See* Exhibit 1.

37. In this Memorandum, Defendant stated: "Eligible employees must be employed by the County on the date that premium pay disbursements are processed in payroll in order to receive premium pay. Otherwise, eligible employees who leave employment with the County for any reason prior to October 31, 2021, will not receive premium pay." (Emphasis in original).

38. Similarly, on April 22, 2022, Defendant Lexington County issued a Memorandum entitled "Premium Pay for Essential Employees." *See* Exhibit 2.

39. In this Memorandum, Defendant stated: "Eligible employees must be employed by the County on the date that premium pay disbursements are processed in payroll in order to receive premium pay. Otherwise, eligible employees who leave employment with the County for any reason prior to Friday May 13, 2022, will not receive premium pay." (Emphasis in original).

40. Despite the fact that Plaintiffs were eligible workers that performed essential work during the time period of January 27, 2020, through March 20, 2022, Plaintiffs have not received any premium pay for their work.

41. The reason given for Plaintiff Brad Amick not receiving any premium pay for the essential work he performed from January 27, 2020 through March 20, 2022, is that he was no longer on the Defendant's payroll after October 3, 2021.

42. The reason given for Plaintiff Taylor Kitchens not receiving any premium pay for the essential work she performed from March 21, 2021, through March 20, 2022, is that she was no longer on Defendant's payroll after April 29, 2022.

43. Defendant, in implementing 42 U.S.C. § 801 *et seq*., and its related regulations, made an arbitrary and capricious decision to only pay those eligible workers that performed essential work during the January 27, 2020, and March 20, 2022, time period who, in addition to meeting all the requirements set forth by statute and regulation, were also still employed by the Defendant at the times the lump sum payments were made.

44. Defendant Lexington County's decision to not deliver premium pay to Plaintiffs and the Putative Class, all eligible workers that performed essential work during the covered time period, has deprived Plaintiffs and the Class of premium payment to which they were entitled to.

## CLASS ALLEGATIONS

45. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

46. Plaintiffs bring this action on behalf of themselves, and, pursuant to ***Rule 23 of the Federal Rules of Civil Procedure*** as representatives of other similarly situated persons who were entitled to premium pay from Defendant.

47. Defendant Lexington County must administer premium pay under the ARPA, SLFRF, and consistent with the guidance as set out by the Department of the Treasury.

48. Lexington County added a requirement that all eligible workers that performed essential work during the covered time periods must be on the payroll at a specific date after each time period expires.

49. In doing so, Lexington County's actions have violated Federal Law, Federal Guidance, and State Law, resulting in damages to essential employees who performed essential

work during the COVID-19 Pandemic who were entitled to premium pay and not on the payroll on two specific dates.

50. ***Specifically, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following two proposed subclasses:***

    (a) All eligible employees employed by Lexington County who performed essential work between January 27, 2020, and March 21, 2021, that left employment with Lexington County prior to October 31, 2021, and did not receive premium pay for essential work performed during the COVID-19 public health emergency.

    (b) All eligible employees employed by Lexington County who performed essential work between March 21, 2021, through March 20, 2022, that left employment with Lexington County prior to May 13, 2022, and did not receive premium pay for essential work performed during the COVID-19 public health emergency.

51. Defendant's illegal withholding of premium pay directly and proximately resulted in damages to the Class members.

52. Defendant's illegal withholding of premium pay continues to directly and proximately cause damages to Class members.

## **THE CLASS MEETS THE REQUIREMENT OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

53. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

54. The Class is properly brought and should be maintained as a class action under Rule 23(a) of the *Federal* Rules of Civil Procedure because it satisfies the prerequisites of numerosity, commonality, typicality, and adequacy.

55. *Numerosity*: The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time and can

only be ascertained through appropriate discovery. Plaintiffs believe that class membership exceeds several hundred persons.

56. *Commonality*: The claims of Plaintiff and the members of the Class involve common questions of law and fact, which predominate over questions affecting only individual members of the Class and which can be answered with common proof, including, *inter alia*, the following: (1) whether withholding premium pay violated Federal law and guidance; (2) whether withholding premium pay violated state law; (3) whether premium pay is considered wages under the SC Payment of Wages Act; (4) whether Defendant's withholding of premium pay was a takings under the South Carolina Constitution; (5) whether Defendant's withholding of premium pay violated the equal protection clause of the South Carolina Constitution; (6) whether Defendant's withholding of premium pay violated the due process clause of the South Carolina Constitution and ***United States Constitution***; and (7) whether Defendant's practice of withholding premium pay from those who performed essential work during this time should be enjoined; (8) whether Defendant should be ordered to provide premium pay in accordance with South Carolina and Federal law; and (9) whether Plaintiffs and Class members are entitled to damages as a result of Defendant's withholding.

57. *Typicality*: Plaintiffs' claims are typical of those of the members of the Class because their claim has the same essential characteristics as the claims of the Former Employees or Class, and their claims arise from the same course of conduct by Defendant. Plaintiffs and all of the Former Employees or the Class are eligible employees, who provided essential services during the COVID-19 pandemic for Lexington County. Defendant's actions in withholding the premium pay from the Class was a unform policy applied to all of those eligible under federal law.

58. *Adequacy*: Plaintiffs will fairly and adequately represent the interests of all members of the Class. Plaintiffs' claims are common to all members of the Class and Plaintiffs have strong interests in vindicating their rights. Plaintiffs are represented by counsel experienced in complex, class action litigation. Neither Plaintiffs nor Plaintiffs' counsel has any interests adverse to, or in conflict with, any absent class member.

59. The amount in controversy for all class members exceeds one hundred dollars.

60. The Plaintiffs are aware of no difficulty in the management of this action that would preclude it from being maintained as a class action.

## FOR A FIRST CAUSE OF ACTION
### (South Carolina Payment of Wages Act)

61. Plaintiffs incorporates the foregoing allegations as if fully set forth herein.

62. At all relevant times, Defendant employed the Plaintiffs and the Class within the meaning of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110. Plaintiffs and the Class were "employees" and were not free from the control and direction of the Defendant.

63. Plaintiffs and the Class worked for Defendant with the clear understanding and agreement by Defendant that their compensation would be consistent with all applicable laws, including federal and state wage and hour laws.

64. Plaintiffs and the Class bring this action to recover those unpaid wages due and owed that are recoverable pursuant to South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110.

65. South Carolina has long recognized the Payment of Wages Act as the vehicle to recover wages due and owed from employment.

66. Accordingly, Plaintiffs and the Class are entitled to receive all compensation, specifically the premium pay from the SLFRF funds given to the Defendant for that express purpose, at the same rate as the Defendant has paid to other employees who performed the same work as the Plaintiffs and the Class.

67. As a result of Defendant's unlawful policies and practices as set forth above, Plaintiffs and the Class have been deprived of compensation due and owing which Defendant owes in their commitment to abide by applicable wage and hour laws.

68. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have been deprived of compensation to which he is entitled, including monetary damages in the amount of three (3) times the unpaid wages as well as reasonable attorneys' fees and costs.

### FOR A SECOND CAUSE OF ACTION
**(Money Had and Received)**

69. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

70. Defendant is receiving $58,028,685.00 to be spent through December 31, 2026, as part of the Federal government's response to the COVID-19 pandemic.

71. A portion of that $58,028,685.00 is intended to compensate eligible workers that performed essential work during the pandemic.

72. Plaintiffs and the Class were employees of the Defendant and qualifies as an eligible worker.

73. Plaintiffs and the Class performed essential work for the Defendant as part of their employment.

74. Defendant performed that essential work during the time frame of the COVID-19 pandemic.

75. Defendant has realized the benefit of receiving federal funds intended for premium pay to eligible workers such as the Plaintiffs and the Class.

76. Defendant has improperly retained the benefit of receiving those federal funds by not paying the Plaintiffs and the Class the premium pay they are entitled to receive.

**FOR A THIRD CAUSE OF ACTION**
**(Violation of the Guarantee to Equal Protection of the Law)**

77. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

78. The Defendant's decision to not pay any premium pay to retired and former eligible workers that performed essential work during the COVID-19 pandemic, as set forth by federal statutes and regulations, is not supported by any rational basis.

79. The Defendant's decision to not pay any premium pay to retired and former eligible workers that performed essential work during the COVID-19, as set forth by federal statutes and regulations, is arbitrary and capricious.

80. The Defendant's decision therefore violates Art. III, § 34 of the South Carolina Constitution guaranteeing equal protection of the laws and must be declared void.

**FOR A FOURTH CAUSE OF ACTION**
**(Unlawful Taking)**

81. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

82. If allowed to stand, the Defendant's decision to not deliver the premium pay earned by the Plaintiffs and the Class oppressively, arbitrarily, capriciously, and unreasonably deprives him of his property.

83. The Defendant's decision, as applied to the Plaintiffs and the Class, violates the protections afforded all citizens against unlawful takings by Art. I, § 13 of the South Carolina Constitution.

**FOR A FIFTH CAUSE OF ACTION**
**(Violation of Due Process as to the *S.C. Constitution and United States Constitution*)**

84. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

85. *No person shall be deprived of life, liberty, or property without due process of law.*

86. By not following the statutes and regulations governing premium pay for eligible workers doing essential work during the covered time period, Plaintiffs and the Class are deprived of the use and enjoyment of their property without due process of law.

87. The Defendant's decision, as applied to the Plaintiffs and the Class is arbitrary, capricious, and is so constitutionally infirm as to require that it be stricken and not enforced.

88. *The violations of Plaintiffs' and the Class members' due process rights under the South Carolina Constitution and United States Constitution have damaged Plaintiffs and the Class Members.*

**FOR SIXTH CAUSE OF ACTION**
**(Declaratory Judgment)**

89. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90. As set forth above, there exists an actual dispute within the parties as to the enforceability of the Defendant's decision to not compensate the Plaintiffs and the Class with the premium pay they earned during the COVID-19 pandemic.

91. The application of the Defendant's decision to the Plaintiffs and the Class constitutes a violation of his due process rights, an unconstitutional taking, and the Defendant should be estopped from applying the Defendant's decision to them.

92. A declaratory judgment defining the rights, privileges, and duties of and between the parties is appropriate pursuant to South Carolina Code § 15-53-10, *et seq.*

## FOR A SEVENTH CAUSE OF ACTION
**(Injunctive Relief)**

93. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

94. As a result of the Defendant's decision, Plaintiffs and the Class have suffered and will continue to suffer irreparable and immediate harm and injury to their property and rights under the South Carolina common law, South Carolina Code, and the Constitutions of the State of South Carolina and of the United States, and they have no adequate remedy at law.

95. The federal statutes and regulations, referenced above and incorporated herein, set forth the requirements for government employees such as the Plaintiffs and the Class to be entitled to premium pay.

96. Plaintiffs and the Class are therefore entitled to a preliminary and permanent injunction enjoining Defendant from applying a requirement that eligible workers that performed essential work during the covered time period also remain in that employment until the premium payment is made by the Defendant.

97. The balance of harm favors the Plaintiffs and the Class because an injunction would merely require Defendant to comply with the terms of federal statutes and regulations outlining who is entitled to premium pay.

98. There is no imminent threat to public health, safety or welfare such that would justify the Defendant's decision not to pay the Plaintiffs and the Class.

99. The granting of an injunction will cause no harm to Defendant, but substantial and irreparable harm and suffering has occurred and will continue to occur to the Plaintiffs and the Class without injunctive relief.

WHEREFORE, Plaintiffs Brad Amick and Taylor Kitchens, and on behalf of the Class, pray for an Order from this Court awarding damages, compensatory and punitive, as to the above

causes of action in an amount to be determined by a jury at trial, as well as a judgment declaring the Defendant's decision unenforceable as to the Plaintiffs and the Class, an injunction barring the application of the Defendant's decision to the Plaintiffs and Class, monetary damages in the amount of three (3) times the unpaid wages as well as reasonable attorneys' fees and costs, as well as such further relief as the Court deems just and appropriate.

Respectfully Submitted,

                                  **RICHARDSON THOMAS, LLC**

                    By: *s/Daniel Haltiwanger*
                        Brady R. Thomas (FBN: 9623)
                        brady@richardsonthomas.com
                        Daniel S. Haltiwanger (FBN: 7544)
                        dan@richardsonthomas.com
                        Grace M. Babcock (FBN: 13880)
                        grace@richardsonthomas.com
                        1513 Hampton Street, First Floor
                        Columbia, SC 29201
                        T: (803) 281-8150

                                  **ATTORNEYS FOR PLAINTIFF**

Dated: September 8, 2023
Columbia, South Carolina